IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

NO. 5:23-CT-3054-FL

| | |
|---|---|
| JAMES SINCLAIR, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) ORDER |
| | ) |
| UNIT MANAGER WHITE, CAPTAIN APPLEWHITE, SGT. BURNETT, and OFFICER MORGAN, | ) |
| | ) |
| Defendants. | ) |

This matter is before the court on defendants' motion for summary judgment (DE 49) pursuant to Federal Rule of Civil Procedure 56 and to seal records filed in support thereof (DE 55). The motion for summary judgment was briefed fully and in this posture the issues raised are ripe for ruling.

## STATEMENT OF THE CASE

Plaintiff, a state inmate proceeding pro se, commenced this action by filing complaint February 21, 2023, asserting claims for violations of his civil rights pursuant to 42 U.S.C. § 1983. Plaintiff alleges defendants failed to repair the plumbing in his housing unit showers, which caused plaintiff to contract a toenail infection because he was forced to stand in unsanitary water while showering, in violation of the Eighth Amendment to the United States Constitution. Defendants unit manager White ("White"), captain Applewhite ("Applewhite"), sergeant Burnett ("Burnett"), and officer Morgan ("Morgan"), were correctional officers at the Granville Correctional Institution ("GCI") during the relevant time period. As relief, plaintiff seeks compensatory and punitive

damages.

Following a period of discovery, and in accordance with the court's case management order, defendants filed the instant motion for summary judgment. Defendants argue that they are entitled to qualified immunity where plaintiff did not suffer serious injury, that the injury is not attributable to the clogged drain, the water did not pose a substantial risk to health or safety, and that defendants were not deliberately indifferent to same. In support of the motion, defendants rely upon memorandum of law, statement of material facts, and appendix of exhibits thereto comprising the following: 1) defendant Applewhite's personal declaration; 2) declaration of Amy La Rosa, a medical records custodian with the Department of Adult Correction; 3) plaintiff's medical records; and 4) pertinent administrative grievances. Contemporaneously therewith, defendants filed the instant motion to seal plaintiff's medical records.

Plaintiff responded in opposition to the motion for summary judgment, relying upon memorandum of law,[1] statement of material facts, and appendix of exhibits thereto comprising the following: 1) plaintiff's declaration; 2) work order logs related to the GCI showers; and 3) additional medical records. As noted above, plaintiff did not respond to the motion to seal.

## STATEMENT OF FACTS

Except as otherwise noted below, the court recounts the facts in the light most favorable to plaintiff. Plaintiff was housed at the GCI during the relevant time period of July through September 2022. (Pl's Decl. (DE 59) at 3).[2] At this time, "the plumbing [in plaintiff's cell block

---

[1] Notably, plaintiff's memorandum of law begins at docket entry 58-1 (filed correctly as a memorandum), but this entry does not include the full document. The argument and conclusion sections of the memorandum were filed as part of plaintiff's appendix, docket entry 59 at pages 58 through 65.

[2] Throughout this order, page numbers in citations to documents in the record are to the page number specified in the footer of the document supplied by the court's case management / electronic case filing (CM/ECF) system for the docket entry (DE) and not the page number, if any, showing on the face of the underlying document.

2

showers] was not working property. The shower's drain would spew up sewage water (dark brown water with strong odor [of] sewage . . . ) and not drain properly." (Id.). As a result, plaintiff took showers in several inches of unsanitary water. (Id.).

"Plumbing and drain repairs at [GCI] are made by the facility's maintenance workers." (Id.). The maintenance workers, however, "only make repairs to documented issues" submitted by correctional officers through a computerized system that generates work orders. (See id. at 3–4). From July 20 through September 9, 2022, "no work order was lodged to notify maintenance [of the] problem . . . with the plumbing." (Id. at 4).

Defendants White, Applewhite, and Burnett were correctional officers assigned to plaintiff's cell block, and they had authority to submit facility maintenance work orders. (Id.). Defendant Morgan, by contrast, was the officer that escorted plaintiff to the shower, and he consistently denied plaintiff's requests to shower in a different area with sanitary water and functional plumbing. (Id. at 9).

Plaintiff recounts several instances in which he requested that defendants White, Applewhite, and Burnett submit work orders to fix the plumbing. For example, on July 21, 2022, plaintiff spoke to defendants White and Applewhite and asked them to submit a work order to address the plumbing issues. (Id. at 4–5). Defendants White and Applewhite told plaintiff they would consider submitting a work order, and in response to plaintiff's statements that he was worried about contracting a disease from the water, they stated, "if you [plaintiff] was worried about that you should not have come to prison." (Id. at 5). Plaintiff continued pleading for submission of a work order, and defendant White said, "catch a disease and we [will] think about it." (Id.).

3

Plaintiff made similar requests to fix the plumbing system throughout late July and August 2022, and he specifically complained about the backed-up sewage and unsanitary water, but defendants consistently refused to submit a work order or allow him to shower in another area. (See id. at 5–6, 9). In response to plaintiff's increasingly aggressive demands to fix the problem, defendants allegedly made numerous unprofessional comments such as "catch [an infectious disease known as] MRSA for all I care." (Id. at 6).

Thus, plaintiff was forced to take showers in unsanitary water for over a month. (See id. at 4–7). On September 8, 2022, plaintiff discovered a fungal infection on his foot. (Id. at 7). Plaintiff promptly showed the infection to defendant Burnett, and she submitted work order to fix the plumbing September 9, 2022. (Id.). The maintenance team fixed the plumbing three days later. (Id.).

As a result of the infection, plaintiff suffered from "constant pain" for approximately 10 months, and his treatment for same required an unspecified "operation." (Id.). Plaintiff's medical records include numerous notes documenting plaintiff's complaints about medical issues with his toenails, and he was diagnosed and treated for tinea unguium, tinea pedis (also known as athlete's foot), and "yellow toenail syndrome." (See, e.g., Medical Records (DE 53) at 3–6, 21–22, 26–30, 38–44, 53–66, 73–74, 182–83, 189–94, 197–204, 298–301).

## COURT'S DISCUSSION

A.  Motion for Summary Judgment

    1.  Standard of Review

Summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R.

Civ. P. 56(a). The party seeking summary judgment "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). Once the moving party has met its burden, the non-moving party must then "come forward with specific facts showing that there is a genuine issue for trial." Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586–87 (1986).[3]

Only disputes between the parties over facts that might affect the outcome of the case properly preclude entry of summary judgment. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247–48 (1986) (holding that a factual dispute is "material" only if it might affect the outcome of the suit and "genuine" only if there is sufficient evidence for a reasonable jury to return a verdict for the non-moving party). "[A]t the summary judgment stage the [court's] function is not [itself] to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." Id. at 249. In determining whether there is a genuine issue for trial, "evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in [non-movant's] favor." Id. at 255; see United States v. Diebold, Inc., 369 U.S. 654, 655 (1962) ("On summary judgment the inferences to be drawn from the underlying facts contained in [affidavits, attached exhibits, and depositions] must be viewed in the light most favorable to the party opposing the motion.").

Nevertheless, "permissible inferences must still be within the range of reasonable probability, . . . and it is the duty of the court to withdraw the case from the [factfinder] when the necessary inference is so tenuous that it rests merely upon speculation and conjecture." Lovelace

---

[3] Throughout this order, internal citations and quotation marks are omitted from citations unless otherwise specified.

v. Sherwin–Williams Co., 681 F.2d 230, 241 (4th Cir. 1982). Thus, judgment as a matter of law is warranted where "the verdict in favor of the non-moving party would necessarily be based on speculation and conjecture." Myrick v. Prime Ins. Syndicate, Inc., 395 F.3d 485, 489 (4th Cir. 2005). By contrast, when "the evidence as a whole is susceptible of more than one reasonable inference, a [triable] issue is created," and judgment as a matter of law should be denied. Id. at 489–90.

  2. Analysis

  Defendants raise the affirmative defense of qualified immunity. The qualified immunity analysis proceeds in two steps, which the court "may address in whichever sequence will best facilitate the fair and efficient disposition of the case." Pfaller v. Amonette, 55 F.4th 436, 444 (4th Cir. 2022). First, the plaintiff must show a violation of a constitutional right. Id.; Stanton v. Elliot, 25 F.4th 227, 233 (4th Cir. 2022). Second, defendants bear the burden of showing the right at issue was not "clearly established" at the time of the alleged misconduct. Pearson v. Callahan, 555 U.S. 223, 231 (2009); Stanton, 25 F.4th at 233.

  The court begins with the first prong. "In order to make out a prima facie case that prison conditions violate the Eighth Amendment, a plaintiff must show both (1) a serious deprivation of a basic human need; and (2) deliberate indifference to prison conditions on the part of prison officials." Strickler v. Waters, 989 F.2d 1375, 1379 (4th Cir. 1993). Under the first prong, "a prisoner must establish . . . a serious or significant physical or emotional injury" or that "he was incarcerated under conditions posing a substantial risk of serious harm." Makdessi v. Fields, 789 F.3d 126, 133 (4th Cir. 2015); Danser v. Stansberry, 772 F.3d 340, 346 (4th Cir. 2014). "Only

6

extreme deprivations are adequate to satisfy the objective component of [a] claim regarding conditions of confinement." De'Lonta v. Angelone, 330 F.3d 630, 634 (4th Cir. 2023).

The deliberate indifference prong requires a showing that defendants knew of and disregarded an excessive risk to inmate health or safety. Farmer v. Brennan, 511 U.S. 825, 837–38 (1994); Danser, 772 F.3d at 347. A plaintiff may establish deliberate indifference by producing direct evidence showing the prison official had actual knowledge of the risk and failed to ameliorate the conditions. Farmer, 511 U.S. at 842–43. The official "must also have recognized that his actions were insufficient to mitigate the risk of harm to the inmate." Iko v. Shreve, 535 F.3d 225, 241 (4th Cir. 2008). However, "prison officials who actually knew of a substantial risk to inmate health or safety may be found free from liability if they responded reasonably to the risk, even if the harm ultimately was not averted." Farmer, 511 U.S. at 844; Odom v. South Carolina Dep't of Corr., 349 F.3d 765, 770 (4th Cir. 2003).

Here, plaintiff fails to establish a triable issue of fact on the objective prong. Failing to repair clogged drains for approximately 50 days, which required plaintiff to stand in several inches of brown water that smelled like sewage when he showered does not rise to the level of a serious deprivation of a basic human need or denial of the "minimal civilized measure of life's necessities." See Farmer, 511 U.S. at 834; De'Lonta, 330 F.3d at 634 (explaining that the deprivation must be "extreme" to satisfy the objective component); Smith v. Ozmint, 578 F.3d 246, 255 (2009) (concluding temporary exposure to unsanitary drinking water did not rise to the level of a constitutional violation); see also Snipes v. DeTella, 95 F.3d 586, 592 (7th Cir. 1996) ("[A]n inch or two of water in the shower [which the inmate alleged was "filthy"] is not an

excessive risk to inmate health or safety nor the denial of the minimal civilized measure of life's necessities").

Plaintiff's evidence stands in stark contrast to the conditions of confinement that the United States Court of Appeals for Fourth Circuit have concluded violate the Eighth Amendment. For example, in Williams v. Griffin, the court of appeals permitted a conditions of confinement claim to proceed to jury trial where plaintiff submitted verified complaint averring that he was housed under the following conditions:

> In addition to the overcrowding, Williams alleged that the plumbing system at [his prison facility] was unsanitary and deficient. Williams asserted that the only toilet in his cell was constantly coated with urine day and night. He also pointed out that his unit had only four showers for use by approximately ninety-six inmates, and that the water temperature fluctuated between scalding hot and extremely cold. Williams described the plumbing system at [the facility] as antiquated and alleged that the inmates were required to walk on floors flooded with sewage because many of the toilets in the facility constantly leaked.

952 F.2d 820, 822, 824–26 (4th Cir. 1991). Likewise, in McCray v. Burrell, the Fourth Circuit concluded plaintiff established an Eighth Amendment violation where the evidence showed he spent approximately 48 hours in a frigid cell with no sink or toilet, and the only place to use the restroom was a hole in the floor covered in excrement. 516 F.2d 357, 367 (4th Cir. 1975).

Here, plaintiff was forced to shower in several inches of water backing up from a clogged drain that smelled of sewage for approximately 50 days. (Pl's Decl. (DE 59) at 3). Plaintiff was not exposed to actual excrement or urine on a "constant" basis or otherwise subject to conditions similar to those recounted in Williams or McCray. Compare Williams, 952 F.2d at 822.

Plaintiff also can establish an extreme deprivation by "produc[ing] evidence of a serious or significant physical or emotional injury resulting from the challenged condition." Jones v. Solomon, 90 F.4th 198, 209 (4th Cir. 2024); Danser, 772 F.3d at 346. Here, while plaintiff asserts

8

that he contracted a fungal infection, there is no evidence in the record tying that infection to the standing water in the showers. See Jones, 90 F.4th at 209 (stating the injury or substantial risk of harm must "result[] from the challenged conditions"); (Pl's Decl. (DE 59) at 7). And while the medical records document plaintiff's diagnoses of various fungal infections on his feet, in the absence of some indication that the standing water caused these issues, plaintiff cannot rely on speculation or conjecture to defeat defendants' motion for summary judgment. See Varner v. Roane, 981 F.3d 288, 294 (4th Cir. 2020). Nor is this a case where the court can infer the infections came from the water, in the absence of any evidence supporting that assertion. Compare Jones, 90 F.4th at 209 (stating expert testimony is not required for Eighth Amendment claim when "laypersons are just as capable of comprehending the primary facts" such as the risk involved in failing to provide insulin doses to a diabetic inmate or direct exposure to excrement).

In addition, and in the alternative, defendants are entitled to qualified immunity on the basis of the second prong. "The relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." Goines v. Valley Cmty. Servs. Bd., 822 F.3d 159, 170 (4th Cir. 2016). "Because the focus is on whether the officer had fair notice that her conduct was unlawful, reasonableness is judged against the backdrop of the law at the time of the conduct." Kisela v. Hughes, 138 S. Ct. 1148, 1152 (2018). And the court "must define the right in light of the specific context of the case, not as a broad general proposition." Younger, 79 F.4th at 385. This "do[es] not require a case directly on point, but existing precedent must have placed the . . . constitutional question beyond debate." Ashcroft v. al-Kidd, 563 U.S. 731, 741 (2011). "[T]o determine whether a right was clearly established, [the court] first look[s] to cases from the Supreme Court,

9

the [Fourth Circuit], or the highest court of the state in which the action arose." Ray v. Roane, 948 F.3d 222, 229 (4th Cir. 2020). In addition, a right may be clearly established "based on a consensus of cases of persuasive authority from other jurisdictions." Booker v. S.C. Dep't of Corr., 855 F.3d 533, 543 (4th Cir. 2017).

Here, plaintiff asserts defendants subjected him to unconstitutional conditions of confinement by forcing him to shower in several inches of standing water that was brown and smelled like sewage. The closest published authority from the Fourth Circuit addressing an Eighth Amendment claim in this context is Williams v. Griffin, 952 F.2d 820 (4th Cir. 1991). But as noted above, Williams involved exposure to actual excrement and urine on a constant basis as opposed to temporary exposure to unsanitary water in a shower. See id. at 822. Moreover, the plaintiff in Williams was exposed to sewage, overcrowding, toilets covered in urine, and showers that fluctuated between scalding hot and extreme cold, and it was the totality of these conditions, as opposed to any one single factor, the established the Eighth Amendment violation. See id. at 822, 824–25. Thus, Williams does not provide a clearly established right to be free from temporary exposure to unsanitary standing water in a shower.

The parties have not provided, and the court has not found, any cases from the Supreme Court, the Fourth Circuit, the Supreme Court of North Carolina, or a consensus of out-of-circuit precedent that clearly establishes the right asserted here. See Booker, 855 F.3d at 543. Accordingly, qualified immunity bars plaintiff's claims for monetary damages.[4]

B.  Motion to Seal

Finally, defendants move to seal plaintiff's medical records filed as exhibits to the

---

[4] Plaintiff does not seek injunctive or declaratory relief in this action. (Compl. (DE 1) at 8).

declaration of Amy La Rosa. The court has reviewed and considered the motion under the governing standard. Doe v. Public Citizen, 749 F.3d 246, 266–67, 272 (4th Cir. 2014). Plaintiff does not oppose sealing these records, and the public has received adequate notice of the motion to seal. Plaintiff's interest in the confidentiality of his medical records requires sealing in this instance. See Local Civil R. 26.1(a)(1). Accordingly, the motion to seal is granted.

## CONCLUSION

Based on the foregoing, defendants' motions for summary judgment (DE 49) and to seal medical records filed in support thereof (DE 55) are GRANTED. The clerk is DIRECTED to maintain docket entries 53 and 54 under seal, and to close this case.

SO ORDERED, this the 25th day of September, 2025.

_____
LOUISE W. FLANAGAN
United States District Judge